**Frank Christopher VASQUEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08-93-00335-CR.**

Court of Appeals of Texas,
El Paso.

June 15, 1995.

Discretionary Review Granted Oct. 11, 1995.

---

Shawna L. Reagin, Houston, for appellant.

John B. Holmes, Dist. Atty. of Harris County, Houston, for appellee/State.

Before BARAJAS, C.J., and LARSEN and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

Frank Christopher Vasquez appeals his conviction for the offense of murder. A Harris County jury found Appellant guilty of the offense and assessed punishment at 60 years' confinement in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine, whereupon the trial court entered judgment in accordance with the jury's verdict. We affirm the judgment of the trial court.

## I. SUMMARY OF THE EVIDENCE

Chad Elvert Ketchum, 19, died at the hands of ostensible friends. During a party at Appellant's residence, a band of heavily armed young men with whom Ketchum was acquainted broke into his vehicle, stole its stereo equipment, set the vehicle ablaze, drove him to an isolated location, and shot him with assault rifles and handguns as he begged for his life.

Appellant hosted a party the evening of August 21, 1992. It was a raucous event, occupying both the front and backyards of Appellant's residence and involving use of alcohol and marijuana. Throughout the party, two SKS assault rifles were on the front porch, and guests periodically handled them. For undetermined reasons, there developed at the party a conspiracy to burglarize the victim's vehicle, steal some of its contents, and kill him.

During the course of the party, while Appellant occupied the victim in the backyard, Appellant's younger brother, Henry Hernandez, George Ramirez, David Gonzalez, Ceasar Ramirez, and Bryant Martinez agreed to burglarize the victim's vehicle. The vehicle was described as a "Blazer" and was parked in front of Appellant's residence. Hernandez, George Ramirez, David Gonzalez, Ceasar Ramirez, and Martinez smashed the vehicle's windows with crowbars,[1] and Hernandez and George Ramirez removed some of the vehicle's stereo equipment and placed it in Chris Moore's car. Shortly thereafter, George Ramirez started the vehicle with a screwdriver. Martinez and John Smithwick then drove the vehicle a short distance to another location in the same neighborhood to remove additional stereo equipment, while Adrian Ramirez and David Gonzalez followed them in Adrian Ramirez's car. Moore and George Ramirez also followed in Moore's car for a short distance, but returned to the party after losing sight of the other two vehicles. After John Smithwick and Adrian Ramirez successfully removed two amplifiers from the vehicle, Adrian Ramirez placed them in his car, and the four actors returned to the party. At an undetermined later time,

---

1. The record shows that Bryant Martinez pled guilty to the offense of burglary of an automobile.

he doused the victim's vehicle in gasoline and set it ablaze.[2]

While the burglars were away, the murder was taking shape. Greg Gonzalez witnessed the burglary of the victim's vehicle in the front yard and watched as it was driven away. He walked to the backyard to see two cars parked in an alleyway adjacent to the yard, where Moore had parked his car behind John Smithwick's car. Greg Gonzalez ran up to the first car and recognized among the passengers Henry Hernandez and the victim, who was in the rear seat. Ceasar Ramirez was driving the first car, and its other occupants included Joseph Villareal and Frank Smithwick. Greg Gonzalez then approached the second car, noted the driver and a rear seat passenger, and recognized Appellant occupying the front passenger seat. Moore was driving the second car, and George Ramirez was seated in the rear seat. Greg Gonzalez asked Appellant where they were going, and Appellant said they were going to kill someone. When asked who they were going to kill, Appellant gestured toward the victim. Greg Gonzalez then got into the car, positioning himself in the rear seat behind the driver. Sometime before he got in, he observed a .45–caliber handgun in Appellant's possession.

The two cars drove a short distance to a four-lane dead-end street in front of an elementary school. The two cars stopped side by side, Appellant briefly speaking with Ceasar Ramirez, the driver of the other car. On Appellant's instructions, Moore turned his car around, crossed the median, and parked on the other side of the street. The occupants of the other car got out and removed two bayoneted rifles from the trunk. They fired the weapons and the victim could be heard screaming. Aside from begging Appellant and his accomplices not to shoot him, the only discernible thing the victim said was, "Mom!" The other rear seat passenger, George Ramirez, then said, "Give me the gun. I'll show them how to do it." George Ramirez got out of the car and was handed the .45 by Appellant. Three more shots

were fired, and the victim stopped screaming.

When the four burglars returned to Appellant's residence, some fifteen gunshots rang out somewhere in the neighborhood as they walked toward the house. Absent from the residence at the time were the victim, Appellant, Frank Smithwick, Henry Hernandez, Ceasar Ramirez, George Ramirez, Moore, and Greg Gonzalez. Another series of gunshots rang out less than a minute later. Less than three minutes thereafter, Appellant, Frank Smithwick, Ceasar Ramirez, George Ramirez, Greg Gonzalez, Joseph Villareal, and Moore returned to the residence in two cars. A panicked Frank Smithwick got out of one car with one of the assault rifles and told Adrian Ramirez to take it. Adrian Ramirez and Appellant then placed the rifles in the trunk of Adrian Ramirez's car. Appellant instructed someone to "get rid of the guns."

Adrian Ramirez and David Gonzalez did dispose of the guns, throwing the two rifles and the .45 into a wooded area. They were never recovered. The victim's body was discovered the following day in front of the elementary school. He had been shot nine times and died of three gunshot wounds to the head. Two .45–caliber slugs were recovered from his body.

## II. DISCUSSION

 Appellant attacks his conviction in nineteen points of error. In his first, second, seventh, eighth, thirteenth, and fourteenth points of error, Appellant claims the trial court erred by admitting into evidence the testimony of three witnesses. A trial court has broad discretion in determining the admissibility of evidence and we will not reverse absent a clear abuse of discretion. *Allridge v. State*, 850 S.W.2d 471, 472 (Tex. Crim.App.1991), *cert. denied*, —— U.S. ——, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993); *Lee v. State*, 893 S.W.2d 80, 84 (Tex.App.—El Paso 1994, no pet.). Because this standard has been much defined by Texas civil courts, we cite their various formulations of it. *Cf. Montgomery v. State*, 810 S.W.2d 372, 380

---

2. The record additionally shows that Adrian Ramirez pled guilty to the offense of arson and

testified at trial under a limited grant of immunity.

(Tex.Crim.App.1990) (quoting Texas Supreme Court's formulation of standard in *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986)). "A [party] who attacks the ruling of a trial court as an abuse of discretion labors under a heavy burden." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex. 1985) (orig. proceeding). The test for abuse of discretion is not whether, in the opinion of this Court, the facts present an appropriate case for the trial court's actions. Rather, it is a question of whether the trial court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d at 241–242; *Amador v. Tan,* 855 S.W.2d 131, 133 (Tex.App.—El Paso 1993, writ denied). Another way of stating the test is whether the act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d at 242, (citing *Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1984)); *Amador v. Tan,* 855 S.W.2d at 133. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d at 242. A mere error of judgment is not an abuse of discretion. *Loftin v. Martin,* 776 S.W.2d 145, 146 (Tex.1989); *Hallmark v. Hand,* 885 S.W.2d 471, 475 (Tex.App.—El Paso 1994, writ denied).

Bryant Martinez, Chris Moore, and Adrian Ramirez testified to numerous statements made by Appellant during and after the crime. The witnesses variously related that Appellant bragged to others that he shot the victim, that the victim begged for his life, that Appellant disposed of the murder weapons, how and why he did so, that he placed marijuana on the victim's body to make the crime appear drug related, that he would not be caught by police, and various instructions he gave to others concerning these and other matters related to the crime. Appellant objected to these statements, and the State responded that they were admissible under the hearsay exceptions for statements by a coconspirator and statements against inter-

est. On appeal, Appellant argues the statements are neither.

Texas Rule of Evidence 801 defines hearsay as an out-of-court statement offered for the truth of the matter asserted. TEX. R.CRIM.EVID. 801(d). Rules 801 and 803 respectively exclude certain statements from the definition of hearsay and create exceptions for others. Although both effectively establish hearsay exceptions, the two rules are supported by entirely different rationales. 2 STEVEN GOODE, OLIN GUY WELLBORN III & M. MICHAEL SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL § 801.7 (Texas Practice 1993 and Supp. 1995). The Rule 803 exceptions are premised on circumstantial evidence of a statement's reliability. *Id.* at § 801.1. Some of the operative theories of reliability are that businesses have strong incentive to keep accurate records and therefore do so, *see* TEX. R.CRIM.EVID. 803(6) (business record), that events or conditions that produce extraordinary excitement leave little opportunity for deliberate fabrication and minimize the risk of a faulty memory, *see* TEX.R.CRIM.EVID. 803(2) (excited utterance), that criminals are not patient, *see* TEX.R.CRIM.EVID. 803(16) (ancient document), and that one does not make incriminating statements unless they are true, *see* TEX.R.CRIM.EVID. 803(23) (statement against interest). Rule 801 exceptions are not based on indicia of reliability, but on an estoppel theory. Specifically, the rationale behind Rule 801(e)(2)(A) is that a defendant should not be heard to challenge the trustworthiness of a statement that came from his own mouth. *Bell v. State,* 877 S.W.2d 21, 24 (Tex.App.—Dallas 1994, pet. ref'd).

The testimony challenged in these points of error concerns statements made by Appellant. Such statements are admissions by a party opponent and are not hearsay. *Cunningham v. State,* 846 S.W.2d 147, 151 (Tex.App.—Austin 1993), *aff'd,* 877 S.W.2d 310 (Tex.Crim.App.1994). That the State at trial offered a different theory for their admissibility does not limit the potential theories Appellant must disprove to demonstrate error because we must uphold the trial court's decision on any theory of law applicable to the case. *Romero v. State,* 800 S.W.2d

539, 543 (Tex.Crim.App.1990); *see also McFarland v. State,* 845 S.W.2d 824, 835–36 (Tex.Crim.App.1992) (overruling defendant's claim that testimony was improperly admitted as statement of coconspirator because it was admissible as a statement against interest), *cert. denied,* —— U.S. ——, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993); *Cunningham v. State,* 846 S.W.2d at 151 (holding defendant's reliance on Rule 803(24) statement against interest exception misplaced because Rule 801(e)(2) provides independent ground for admissibility as admission by party opponent). This principle holds true even when the trial court gives the wrong reason for its decision and applies with particular force to evidentiary rulings. *Romero v. State,* 800 S.W.2d at 543; *Dugard v. State,* 688 S.W.2d 524, 530 n. 2 (Tex.Crim.App.1985), *overruled on other grounds, Williams v. State,* 780 S.W.2d 802, 803 (Tex.Crim.App.1989); *Salas v. State,* 629 S.W.2d 796, 799 (Tex.App.— Houston [14th Dist.] 1981, no pet.). We therefore do not resolve whether the disputed statements come within either of the hearsay exceptions identified by Appellant. Appellant's Points of Error Nos. One, Two, Seven, Eight, Thirteen, and Fourteen are overruled.

■ In his third and fourth points of error, Appellant claims the trial court erred by admitting the testimony of Bryant Martinez concerning a statement made by Frank Smithwick during the crime. Martinez testified that upon arriving back at Appellant's residence after burglarizing the victim's vehicle, he heard some fifteen gunshots somewhere in the neighborhood followed by another series of gunshots less than a minute later. Less than three minutes thereafter, a car pulled up and "Frank Smithwick got out of the car panicking, telling Adrian Ramirez: Here, take the gun. Take the gun." Appellant objected to this testimony, and the State responded that the statement was admissible as the statement of a coconspirator or as a statement against interest. Appellant now claims it is neither.

We do not pause to resolve whether the statement was admissible on either theory identified by Appellant. Although we question whether the testimony relates a statement that asserts a matter within the scope of Texas Rule of Evidence 801(c) and merely assume that it does for the sake of discussion, we find the statement admissible as an excited utterance pursuant to Rule 803(2). Martinez testified that he heard two series of gunshots late at night in Appellant's residential neighborhood. Within three minutes of the last series, Frank Smithwick arrived with an assault rifle in his hands and urged a friend to take it. Whether or not the trial court concluded that Frank Smithwick had fired the shots or was himself shot at, his presence in the neighborhood when gunshots were heard, his possession of an assault rifle, and, most importantly, his panic-stricken state suffice to establish that the gunshots themselves, if not some related activity, evoked in him an excited state within the meaning of Rule 803(2). *See McFarland v. State,* 845 S.W.2d at 846 (holding that critical factor in Rule 803(2) analysis is whether declarant was still dominated by emotions, excitement, fear, or pain of event). Appellant's Points of Error Nos. Three and Four are overruled.

In his fifth and sixth points of error, Appellant claims the trial court erred by admitting the testimony of Bryant Martinez concerning a statement made by David Gonzalez immediately after Frank Smithwick handed the assault rifle to Adrian Ramirez. Martinez testified that David Gonzalez said that Henry Hernandez had told David Gonzalez that Hernandez had shot the victim. Appellant's double hearsay objection to this testimony was overruled. The State concedes that the testimony may have been improperly admitted, but claims that any error was cured when Martinez later testified over objection that he was present at a gathering the following day when Appellant bragged that his little brother, Hernandez, had shot the victim.

■ We do not pause to resolve whether this testimony was properly admitted because we find that any error it may have caused was harmless. Martinez testified that he and many others gathered at Appellant's residence the following afternoon. While there, he heard Appellant brag that Appellant's little brother, Hernandez, had

shot the victim. This does little to incriminate Appellant. He did not say that he helped his brother. He did not say that he instructed or even encouraged his brother. He did not say that he had any advance notice of his brother's conduct. It is merely an admission that he knew of his brother's conduct after the fact. While it may have been error to air this testimony before the jury, we find that it was not so damning to Appellant as to prevent us from concluding beyond a reasonable doubt that it did not affect Appellant's conviction or punishment. *See* TEX.R.APP.P. 82(b)(2). Consequently, Appellant's Points of Error Nos. Five and Six are overruled.

In his ninth and tenth points of error, Appellant claims the trial court erred by admitting the testimony of Chris Moore concerning a statement made by George Ramirez at the scene of the murder. Moore testified that he drove his vehicle, in which Appellant, George Ramirez, and Greg Gonzalez were riding, to the scene of the murder. At the scene, Moore saw Appellant speak with unidentified people in another car. Sometime thereafter, Moore saw unidentified people remove two bayoneted rifles from the trunk of the other car. Five to ten gunshots rang out, and Moore heard the victim screaming. Moore testified that George Ramirez then said, "Let me show them how it's done," whereupon George Ramirez got out of the car and was handed a .45-caliber handgun by Appellant. Moore heard three more gunshots, and the victim's screaming ceased.

■■■ The statement was admissible as the statement of a coconspirator pursuant to Rule 801(e)(2)(E). When two or more people take part in the commission of a felony, evidence of a conspiracy is admissible even though the substantive crime of conspiracy is not charged. *Meador v. State,* 812 S.W.2d 330, 332 (Tex.Crim.App.1991); *Roy v. State,* 608 S.W.2d 645, 651 (Tex.Crim.App.1980). The coconspirator exception to the hearsay rule is not limited to prosecutions for conspiracy; it is a rule of evidence applicable to any offense. *Meador v. State,* 812 S.W.2d at

332; *Roy v. State,* 608 S.W.2d at 651. To avail itself of the coconspirator exception, the State must demonstrate (1) that a conspiracy existed, (2) that the statement was made during the course and in furtherance of the conspiracy, and (3) that both the declarant and Appellant were members of it. *See Deeb v. State,* 815 S.W.2d 692, 696 (Tex.Crim.App. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3038, 120 L.Ed.2d 907 (1992).

■■■ The first element the State must prove to avail itself of the coconspirator hearsay exception is the existence of a conspiracy. By the time George Ramirez made the statement, Appellant and his companions had broken into the victim's vehicle and stolen its stereo equipment. George Ramirez, the hearsay declarant, himself helped carry away some of the equipment. He then started the vehicle with a screwdriver and followed in Moore's vehicle as others drove in the victim's stolen vehicle. Moore then drove to the scene of the murder, a four-lane dead-end street, with Appellant and George Ramirez in his car. Also present was another vehicle with at least three other persons, and together they possessed at least two assault rifles and a large-caliber handgun. Further, by the time of the statement, many shots had already been fired, and the victim was screaming in pain and/or for mercy. Only after all this did George Ramirez say, "Let me show them how it's done." The statement effectively communicated his eagerness to participate in the killing,[3] and it actually produced a response from Appellant that enabled him to do so. By the time of the statement, there clearly existed a conspiracy to kill the victim.

■■■ The State must also prove that the statement was uttered by a coconspirator during the course and in the furtherance of the conspiracy. The sum of George Ramirez's actions prior to the statement, not the least of which is his overt request to directly contribute the victim's demise, suffices to render him a coconspirator. It was also made during the course and in furtherance of the conspiracy. We think it rare, if

---

3. We can and do use the statement itself to help prove the existence of a conspiracy. *Bourjaily v. United States,* 483 U.S. 171, 181, 107 S.Ct. 2775, 2781–82, 97 L.Ed.2d 144 (1987); *Callaway v. State,* 818 S.W.2d 816, 831 (Tex.App.—Amarillo 1991, pet. ref'd).

at all possible, that a request to help effect a senseless murder will not further it, especially when the request is met with conduct intended to allow the declarant to participate in it. Appellant's Points of Error Nos. Nine and Ten are overruled.

In his eleventh and twelfth points of error, Appellant claims the trial court erred by admitting into evidence the testimony of Chris Moore concerning a statement made by Frank Smithwick. Moore testified that the day following the murder, while gathered at Appellant's residence, Frank Smithwick and others were talking about "[t]he way they had shot Chad and the way he looked whenever they were shooting him and stuff ..., squirming around and crawling on the floor."

 The statement was admissible as a statement against interest pursuant to Rule 803(24). Frank Smithwick and possibly others were bragging about their participation in the crime. While he may have intended it to enlarge his reputation or uttered it merely for the irrational pleasure of reliving the event, the statement was essentially a confession to a crime. Confessing to criminal conduct is usually against one's interest, at least to the extent it is always possible that an addressee will later reveal the statement to authorities in an effort to exonerate himself or another accused. *See Davis v. State,* 872 S.W.2d 743, 747 (Tex.Crim.App.1994). Rule 803(24) does not require a specific intent to expose the declarant to criminal liability. It does, however, require corroborating circumstances sufficient to clearly indicate the trustworthiness of the statement. *Id.* at 747–48. Factors to be considered in examining the existence of corroborating circumstances include the timing of the declaration, its spontaneity, the relationship between the defendant and the party(ies) to whom the statement was made, and the existence of independent corroborating facts. *Cunningham v. State,* 877 S.W.2d 310, 312 (Tex.Crim. App.1994); *Davis v. State,* 872 S.W.2d at 748. In the instant case, corroborating circumstances indicating the statement's reliability exist in the already-adduced evidence that a conspiracy to kill the victim had developed, that his vehicle had been burglarized and

stolen, and that Frank Smithwick was present at the scene of the murder.

With respect to the "others" who may have made similar statements, the anonymity of the term ameliorates much of the harm the statement would otherwise have wrought on Appellant. The context of the statement does, however, reveal that all those who may have made similar statements were speaking in the first person. That is, they were relating their own participation in the crime. Thus, to the extent the disputed testimony related the hearsay statements of persons other than Frank Smithwick, these statements, too, were statements against the declarants' interest. Appellant's Points of Error Nos. Eleven and Twelve are overruled.

In his fifteenth, sixteenth, and seventeenth points of error, Appellant claims the trial court erred by admitting the testimony of Greg Gonzalez concerning statements made by Appellant. While at the party, Greg Gonzalez observed someone break into the victim's vehicle and witnessed Bryant Martinez drive away in it. While in the backyard later, Greg Gonzalez observed two cars parked in an alleyway. He approached the first and saw Henry Hernandez and the victim among the occupants. He approached the second car and saw Appellant in the front passenger seat. Greg Gonzalez asked Appellant where he was going, and Appellant responded that he was going to kill someone. When asked the identity of the intended victim, Appellant "indicated by motion of his head" that he was going to kill the victim. Greg Gonzalez then entered the car and accompanied the occupants to the murder scene. He heard gunshots and screaming at the scene, whereupon the person sitting next to him said, "Give me the gun. I'll show them how to do it." From his position in the car, Greg Gonzalez then heard several more gunshots. Greg Gonzalez also testified that when they returned to Appellant's residence after the shooting, he saw Appellant and an unknown person place their weapons in the trunk of Adrian Ramirez's car, and that Appellant instructed Adrian Ramirez to "get rid of the guns."

 We find the first two statements to be admissible as statements against inter-

est pursuant to Rule 803(24). Appellant's statement that he was going to kill someone, in light of his possession of a firearm and the organization of a two-car caravan, was essentially a confession to the offense of conspiracy to commit murder. *See* TEX.PENAL CODE ANN. § 15.02 (Vernon 1994) (codifying conspiracy as discrete offense apart from its object). As we stated earlier, confessions are generally against one's interest. We therefore need not address whether the statement was admissible because it prospectively incriminated Appellant by connecting him to the victim's actual murder. Independent evidence that the victim's vehicle had already been burglarized and stolen and that Appellant held in his hand a .45–caliber handgun establish corroborating circumstances that clearly indicate the trustworthiness of the statement. The identification of the victim as the intended target of the conspiracy was also admissible as a statement against interest. Claiming to plan to kill a specific person is at least as incriminating as claiming to plan to kill "someone."

■■■ With respect to the manner by which Appellant identified the victim, the State does not claim that Appellant's physical conduct did not constitute a statement within the meaning of Rule 801, and we therefore assume that it does. Appellant complains generally that the nod that Greg Gonzalez interpreted as Appellant's identification of the victim was too indefinite, but this does not aid his hearsay objection. Appellant does not claim that the physical act did not constitute or was not intended as an assertion, and any interpretive spin to which it may have been subject, affected only its weight, not its admissibility. Appellant's Points of Error Nos. Fifteen and Sixteen are overruled to the extent they challenge the admissibility of the first two statements.

■■■■ We find the fourth statement, that Appellant instructed Adrian Ramirez to dispose of the guns, was admissible as the statement of a coconspirator pursuant to Rule 801(e)(2)(E). We have already found that there existed a sufficient evidentiary basis to conclude that Appellant and others were engaged in a conspiracy to kill the victim and that Appellant was part of it. The only further conclusion we need reach is that Appellant's instruction was made in the furtherance of the conspiracy. "A conspiracy is not terminated until everything has been done that was contemplated to be done by the conspirators." *Bates v. State*, 587 S.W.2d 121, 132 (Tex.Crim.App.1979). Insofar as criminals generally wish to conceal their crimes, and insofar as conspiring by its very nature occurs out of the public light, concealing instructions are generally made in the furtherance of the conspiracy. *See Helms v. State*, 493 S.W.2d 227, 230 (Tex. Crim.App.1973) (holding testimony concerning post-murder instruction to dispose of murder weapon admissible as statement of coconspirator); *Sherwood v. State*, 732 S.W.2d 787, 796 (Tex.App.—Fort Worth 1987, no pet.) (holding post-murder statements admissible because conspiracy continued until all incriminating evidence had been concealed). Appellant's Points of Error Nos. Fifteen and Sixteen are overruled in their entirety.[4]

In his eighteenth point of error, Appellant claims the trial court erred by refusing to submit the issue of the accomplice status of Bryant Martinez to the jury. Although he does not allude to it in his brief, Appellant presumably wished to give the jury an additional opportunity to determine his guilt or innocence without considering Martinez's testimony. Prior to the submission of the court's charge to the jury, Appellant requested that there be included an instruction on the accomplice witness rule, which is set out in Article 38.14 of the Code of Criminal Procedure.[5] Appellant dictated the proposed

4. Appellant challenges the admissibility of the third statement, that an unknown person wanted to participate in the killing, in his seventeenth point of error. The record makes it thoroughly apparent that George Ramirez was the unknown person, and that Appellant, the declarant, and George Ramirez were riding in Chris Moore's car. We have already resolved the admissibility of one version of this statement in our analysis of Appellant's ninth and tenth points of error and therefore need not address Point of Error No. Seventeen.

5. The section reads:

**Article 38.14 Testimony of Accomplice**

instruction to the court reporter, whereupon the trial court merely took the matter under advisement. The trial court never thereafter ruled on the request, and the disputed instruction was not included in the jury charge.

■■■ Appellant has waived any error the omission of the accomplice witness instruction may have caused. In order for an issue to be preserved on appeal, there must be a timely objection that specifically states the legal basis for the objection. *Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App. 1990); *Little v. State,* 758 S.W.2d 551, 564 (Tex.Crim.App.1988), *cert. denied,* 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988); *Ortiz v. State,* 825 S.W.2d 537, 542 (Tex. App.—El Paso 1992, no pet.). Specific objections are required so that the trial judge has an opportunity to rule and opposing counsel has an opportunity to remove the objection or supply other testimony. *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Crim.App. 1977). An objection stating one legal basis may not be used to support a different legal theory on appeal. *Rezac v. State,* 782 S.W.2d at 870; *Little v. State,* 758 S.W.2d at 564. With the exception of the right of trial by jury, a defendant can waive any trial error, including constitutional error, by failing to properly object or request the proper relief. TEX.CODE CRIM.PROC.ANN. art. 1.14 (Vernon Supp.1995); *Little v. State,* 758 S.W.2d at 564; *Thompson v. State,* 802 S.W.2d 840, 842 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). Once a defendant lodges an initial objection, he must obtain an adverse ruling on his objection to preserve the issue for appeal. TEX.R.APP.P. 52(a); *Turner v. State,* 805 S.W.2d 423, 431 (Tex.Crim.App.1991) (failure to obtain ruling on objection to jury panel questioning waives error), *cert. denied,* 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991); *Stevens v. State,* 671 S.W.2d 517, 521 (Tex.Crim.App.1984) (failure to obtain a ruling on an objection to leading questioning waives error); *Bryant v. State,* 570 S.W.2d 921, 926 (Tex.Crim.App.1978) (no error where the court never ruled on objection to unresponsive answer); *Collection Consul-*

*tants, Inc. v. State,* 556 S.W.2d 787, 794 (Tex.Crim.App.1977) (failure to obtain a ruling on a motion for mistrial waives any error), *cert. dismissed,* 436 U.S. 901, 98 S.Ct. 2228, 56 L.Ed.2d 399 (1978).

■■■ The Texas Code of Criminal Procedure instructs that charging error is preserved for appeal if a party dictates the requested instruction into the record. *See* TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1995). In this context, the requirement of such a request is akin to the need to initially object to unwelcome evidence. Thus, Article 36.14 merely renders a dictated request sufficient to place the issue before the trial court. Significantly, it does not obviate the well-established need to pursue the matter to its ultimate end by either obtaining an adverse ruling or objecting to the trial court's refusal to rule. The failure to so pursue the issue amounts to an abandonment of the claim.

■■■ Appellant largely acknowledges his waiver, conceding that the trial court did not immediately rule on his request but apparently arguing that we may infer an adverse ruling from the absence of the instruction in the charge. Such an inference is contrary to the substantial body of case law that requires both an objection and an adverse ruling thereon to preserve error. *See e.g.,* TEX.R.APP.P. 52(a); *Turner v. State,* 805 S.W.2d 423, 431 (Tex.Crim.App.1991). Thus, although he objected, his failure to pursue his objection to its logical end renders his objection ineffectual. When no proper objection is made at trial, error in the jury charge will mandate reversal only if it is so egregious and created such harm that the defendant did not have a fair and impartial trial. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim.App.1984); *Nevarez v. State,* 847 S.W.2d 637, 645 (Tex.App.—El Paso 1993, pet. ref'd). In making this determination, we examine the harm caused in the light of the entire jury charge, the state of the evidence, including contested issues and the weight of

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the cor-

roboration is not sufficient if it merely shows the commission of the offense.
TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979).

probative evidence, and any other relevant information in the record. *Almanza v. State,* 686 S.W.2d at 171; *Nevarez v. State,* 847 S.W.2d at 645.

▮ Assuming the jury charge erroneously deprived the jury of the opportunity to deem Martinez an accomplice, we find that no egregious harm came to Appellant thereby because similar, more damaging admissible evidence was adduced from other witnesses. The most damaging testimony from Martinez recounted his role in the burglary and related Appellant's post-crime utterances about the murder. Martinez did not claim to have heard of Appellant's plans to kill the victim or to have seen Appellant actually shoot the victim. Martinez did not even claim to be present at the scene of the murder. Contrastingly, Chris Moore and Greg Gonzalez collectively testified that Appellant expressly stated his intent to kill the victim, that they accompanied him to the scene of the murder, and that Appellant appeared to be in control of the entire event. While Martinez did testify to Appellant's post-murder boasting about his role in the crime, other witnesses, including Adrian Ramirez, gave similar testimony and even recounted how Appellant mocked the victim's conduct as he lay dying in the street. Because Martinez's testimony was largely duplicative of the testimony of other witnesses, we conclude that the potentially erroneous jury charge did not cause Appellant's trial to be so plagued by error that it was fundamentally unfair. Accordingly, Appellant's Point of Error No. Eighteen is overruled.

In his nineteenth point of error, Appellant claims the trial court erred by refusing to suppress the statements he gave to police during the investigation of the murder. At a pretrial suppression hearing, Harris County Sheriff's Detective William Taber testified that he went to Appellant's residence on August 24, 1992. Taber informed Appellant that he was investigating the victim's death and asked him to return to the police station to make a formal written statement. Appellant said "no problem." Taber transported Appellant and, at Appellant's request, his girlfriend to the station in the rear seat of his unmarked police vehicle. It contained no prisoner's cage or other method of restraint. Appellant was not handcuffed. Taber testified that Appellant was not in custody at this time and was free to leave. This first statement was taken at 9 p.m., and in it, Appellant acknowledges that he hosted a party the night of the murder, but denies ownership of a .45–caliber handgun, knowledge of the victim, and any involvement in his death. The statement itself is entitled "VOLUNTARY STATEMENT." Appellant initialed each paragraph of the statement and indicated in it his willingness to undergo a polygraph examination.

Harris County Sheriff's Detective William Valerio took a second statement from Appellant at 11:52 p.m. on the same night. The events that transpired between the first and second statements are not clear, but there is no record evidence to indicate Appellant left the police station between statements. After the first statement, Valerio continued to speak with Appellant. Although Appellant had become a suspect by the time of the second statement, Valerio testified that Appellant was not yet in custody. Prior to making the second statement, Appellant was *Mirandized* by Valerio, and Appellant indicated that he understood all of his rights. Valerio testified that Appellant was not threatened or coerced in any way, that he was not handcuffed, that he was free to leave at any time, and that he was allowed to drink coffee throughout the interview. The second statement is entitled "STATEMENT OF A PERSON NOT IN CUSTODY." In it, Appellant concedes that he lied in his first statement, citing fear of retaliation by the killers. Appellant then claimed that a group of partygoers informed him of various details of the killing, including the location of the weapons.

After the second statement, Taber and Valerio took Appellant and Bryant Martinez, who was also at the station for questioning, to a wooded area to search for the murder weapons. After a fruitless search, the officers went to the residence of Adrian Ramirez, who Appellant indicated was responsible for disposal of the weapons. While the officers spoke with Adrian Ramirez at his residence, Appellant was left unhandcuffed

and unsupervised in Valerio's vehicle. Adrian Ramirez then implicated Appellant in the crime. When Valerio confronted Appellant with this information, Appellant conceded some involvement. Both Taber and Valerio testified that from that moment, Appellant was in custody.

The parties then returned to the police station, where Appellant gave a third statement at 6:15 a.m. on August 25, 1992. Valerio testified that he did not threaten or coerce Appellant in any way while taking the third statement. At no time did Appellant express a desire to terminate the interview or speak with a lawyer. The third statement is entitled "STATEMENT OF A PERSON IN CUSTODY." It recites that prior to making it, Appellant was *Mirandized*, and Appellant initialed six separate paragraphs to this effect. It further states that Appellant knowingly and voluntarily waived his *Miranda* rights and voluntarily gave the third statement. In it, Appellant admits to being present while others killed the victim.

The trial court filed findings of fact and conclusions of law in accordance with Texas Code of Criminal Procedure Article 38.22, Section 6. The trial court's findings of fact largely coincide with the foregoing chronology of events. The trial court concluded that Appellant was not in custody during the first or second statements and that he was in custody by the time the third statement was made. It found that the second and third statements contained the necessary warnings, that Appellant knowingly and voluntarily waived them, and that all three statements were given freely and voluntarily. Appellant attacks that trial court's conclusions (1) that Appellant was not in custody during the first and second statements, (2) that probable cause existed to arrest Appellant prior to the third statement, and (3) that all three statements were given voluntarily.

 A trial court has broad discretion in determining the admissibility of evidence, and we will not reverse absent a clear abuse of discretion. *Allridge v. State*, 850 S.W.2d at 471, 472. On a motion to suppress evidence, the trial judge is the sole and exclusive trier of fact and judge of credibility of witnesses, including the weight to be given

their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Cannon v. State*, 691 S.W.2d 664 (Tex.Crim.App. 1985), *cert. denied*, 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986); *Laca v. State*, 893 S.W.2d 171, 177 (Tex.App.—El Paso 1995, pet. filed); *Lee v. State*, 893 S.W.2d at 80, 84; *Chavarria v. State*, 876 S.W.2d 388, 391 (Tex.App.—El Paso 1994, no pet.). In that regard, the trial court was free to believe or disbelieve the testimony of each of the State's witnesses as well as the testimony of Appellant. We do not engage in our own factual review but merely decide whether or not the trial judge's findings of fact are supported by the record. If the findings are supported by the record, we are not at liberty to disturb them. Thus, on review, we only address the question of whether the trial court improperly applied the law to the facts. Should the trial judge's determination be correct on any theory of law applicable to the case, it will be sustained. *Romero*, 800 S.W.2d at 543; *Laca v. State*, 893 S.W.2d at 177; *Lee v. State*, 893 S.W.2d at 84. This principle holds true even if the trial court gives the wrong reason for its decision, especially when the decision concerns the admission of evidence. *Romero v. State*, 800 S.W.2d at 543; *Dugard v. State*, 688 S.W.2d 524 (Tex.Crim.App.1985), *overruled on other grounds*, *Williams v. State*, 780 S.W.2d 802, 803 (Tex.Crim.App.1989).

 We find that the trial court did not abuse its discretion by concluding that Appellant was not in custody during the first and second statements. The Court of Criminal Appeals set out the controlling principle in *Shiflet v. State*, 732 S.W.2d 622 (Tex.Crim. App.1985):

We are unaware of any rule of law which forbids lawfully constituted officers of the law from requesting persons to accompany them, or of providing transportation to the police station or some other relevant place in furtherance of an investigation of a crime.... Nor are we aware of any rule of law which forbids one to reject such request. If the circumstances show that the transportee is acting only upon the invitation, request, or even urging of the police, and there are no threats, express or

implied, that he will be taken forcibly, the accompaniment is voluntary, and such person is not then in custody. In other words, under those circumstances, such person has not "been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* [384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ].

*Shiflet v. State,* 732 S.W.2d at 628. The evidence of the events surrounding the first two statements provide support for the trial court's finding that Appellant voluntarily accompanied the detectives and assisted in the investigation. He was initially summoned by only one detective. He was allowed to bring his girlfriend to the station and was taken there unrestrained in a police vehicle. He was never handcuffed or locked inside a police car. Detectives did not physically seize him or by show of authority or force, such as the brandishing of a weapon, force him to accompany them. Once at the station, the niceties of voluntary submission to interrogation continued. Appellant was allowed to visit with his girlfriend. He was allowed to drink coffee and visit the bathroom. Police were quite clear that Appellant was free to leave at any time during the first two statements. In short, Appellant voluntarily cooperated with police throughout the investigation. Appellant's Point of Error No. Nineteen is overruled to the extent it challenges his noncustodial status during the first two statements.

Appellant next claims that the State lacked probable cause to justify Appellant's warrantless arrest between the second and third statements. The challenge assumes that Appellant was arrested. The record does not reflect that Appellant was actually arrested, although Valerio testified that Appellant was in custody after Adrian Ramirez implicated him in the crime. The State does not now dispute that Appellant was effectively arrested, and argues only that his arrest was justified. Assuming Appellant was arrested, we find the warrantless arrest justified.

■ Valerio testified that Adrian Ramirez implicated Appellant in the crime and that Appellant acknowledged that he was present when the victim was killed, contrary to two previous sworn statements. This testimony sufficed to allow the trial court to conclude that Appellant played a role in the murder and was in some fashion criminally responsible for it. The permissible inference that Appellant participated in the killing, coupled with his contradictory statements, justify Appellant's warrantless arrest. Appellant's Point of Error No. Nineteen is overruled to the extent it challenges the propriety of his arrest.

■ Lastly, Appellant claims that all three statements were not given freely and voluntarily. We have already addressed this issue in our discussion of Appellant's custodial status during the first two statements, and the evidence relating to the voluntariness of his third statement is nearly identical. The trial court had before it ample evidence to allow it to conclude that Appellant was not threatened or coerced in any way and that he was in fact free to go at any time. He simply elected to remain and aid police in the investigation. Police testified that Appellant was not promised anything in exchange for his statements. Appellant repeatedly averred in writing that he had read, was aware of, and understood his rights, and that he voluntarily elected to waive them. The trial court was entitled to believe both the benign testimony of the police and Appellant's repeated written representations of voluntary cooperation. Appellant's Point of Error No. Nineteen is overruled in its entirety.

Having overruled each of Appellant's points of error, we affirm the judgment of the trial court.