No. 04-99-00634-CR



James LEGATE,


Appellant



v.



STATE of Texas,


Appellee



From the 290th Judicial District Court, Bexar County, Texas


Trial Court No. 98-CR-06480


Honorable Sharon MacRae, Judge Presiding



Opinion by: Phil Hardberger, Chief Justice


Sitting: Phil Hardberger, Chief Justice

 Tom Rickhoff, Justice

 Catherine Stone, Justice


Delivered and Filed: May 30, 2001


AFFIRMED

 James Legate ("Legate") was convicted of murder and sentenced to 99 years imprisonment.

In his brief, Legate complains that the trial court erred by: (1) admitting hearsay statements; (2) not
providing the defense grand jury testimony for impeachment purposes; (3) failing to allow adequate
time to investigate recently discovered evidence; and (4) admitting prejudicial autopsy photographs.
Legate also complains that the State lost a witness's exculpatory statement. We overrule each of
these complaints and affirm the trial court's judgment.

Facts

 Eddie Garcia ("Garcia") and Pedro Zamora ("Zamora") were partners in the Mexico Que
Nice nightclub. The nightclub was losing money under Zamora's management, partly due to
Zamora's habit of giving away free drinks and providing passes for friends so that they could avoid
paying the cover charge. As a result, Garcia fired the entire nightclub staff, hired all new employees,
and began to take money from Zamora's paychecks as compensation for the free drinks Zamora
continued to give away. Tensions escalated between the two men. Eventually, Garcia planned a
meeting to inform Zamora of Garcia's intent to force Zamora out of the business. Garcia was
murdered before the meeting took place. 

 The murder occurred at Garcia's office, located next to a club called "Players." According
to witnesses, Legate arrived at Players approximately four hours before Garcia was killed. He carried
a briefcase and wore his hair in a ponytail. Legate sat drinking beer and staring out of the club
window for several hours. Later that afternoon, Legate closed the blinds because the "sun was hitting
his eyes," but left almost immediately thereafter, taking his briefcase with him. Moments later,
gunshots were fired next door in Garcia's office. The Players bartender saw Legate running away
from the office. Several other witnesses also testified that they saw Legate running from the vicinity
of Garcia's office.

 Legate was arrested shortly thereafter because he matched the suspect's description and was
acting nervous in the presence of the police officer. Legate claimed that he had just come from a
nearby Burger King; however, witnesses inside the Burger King stated that Legate had walked in the
door and immediately back outside. In addition to having alcohol on his breath, Legate was sweating
profusely. Near the location of the shooting, an abandoned briefcase similar to the one witnesses
reported Legate carrying, was found with a handgun covered in electrical tape lying inches away. The
handgun was later determined to be the murder weapon.

 A jury convicted Legate of Garcia's murder, and Legate timely filed this appeal.

Hearsay Statements

 In his first point of error, Legate contends that the trial court erroneously admitted hearsay

statements concerning the existence of a conspiracy. The statements Legate complains of were made
by Juan, or Jesse, Hernandez ("Hernandez"). Hernandez testified that prior to Garcia's death Zamora
met with Legate and a few others on the patio of the nightclub owned by Zamora and Garcia prior
to Garcia's death. Hernandez testified that he overheard Zamora tell Legate and the others that he
[Zamora] needed protection from an lawyer (or "abogado" in Spanish) who was trying to take over
Zamora's ownership in the nightclub, and that Zamora wanted the lawyer hurt. Hernandez, as well
as a Bexar County interpreter, indicated in their testimony that in Spanish, the term "abogado" is
often used to denote a practicing attorney or someone who does things for a person. Zamora told
Legate that he wanted Legate to protect him from the lawyer who officed close to Players nightclub.
Hernandez did not observe Legate saying anything to Zamora at the time, but Legate later told
Hernandez that he was going to try to "work for" Zamora. Hernandez testified that Legate was not
making enough money at his regular job, and, therefore, began to work as a bodyguard for Zamora,
to "do some part-time for him, nights, hang around [Zamora], watch [Zamora's] back." According
to Hernandez, around the time of the meeting at the nightclub and close to the time Garcia was killed,
Legate asked whether Hernandez could get a gun for him. Legate told Hernandez the gun was for
"protection." Hernandez furnished Legate a gun and testified that the weapon he provided Legate
was very similar to the murder weapon--the only difference being that the murder weapon was
wrapped in tape.

 The trial court admitted Hernandez's statements as non-hearsay as either an admission by a
party opponent, or a statement made by a co-conspirator during the course and furtherance of a
conspiracy.

 1. Admission of a Party Opponent

 Rule of Evidence 801(e)(2)(B), provides, in part, that an out of court statement is not hearsay
if it is: (1) an admission by a party opponent; (2) offered against that party; and (3) a statement of
which the party has manifested an adoption or belief in its truth. Tex. R. Evid. 801(e)(2)(B). The
proponent bears the burden of demonstrating to the trial court by a preponderance of the evidence
that the statement meets the criteria for an admission by a party opponent. Meador v. State, 812
S.W.2d 330, 333 (Tex. Crim. App. 1991). In admitting the testimony regarding the statement, the
trial court implicitly finds that the proponent has carried its burden. Alvarado v. State, 912 S.W.2d
199, 215 (Tex. Crim. App. 1995). Only upon finding an abuse of discretion may an appellate court
disturb the trial court's ruling. Id. 

 Adoption of statements may be manifested in actions, responses, or acquiescence. Trevino
v. State, 991 S.W.2d 849, 853 (Tex. Crim App. 1999); Cantu v. State, 939 S.W.2d 627, 635 (Tex.
Crim. App. 1996); Tucker v. State, 771 S.W.2d 523, 536 (Tex. Crim App. 1988). There is sufficient
support for the trial court's finding that Legate had adopted the statements Zamora made regarding
the lawyer through his actions, verbal and non-verbal. After the nightclub meeting, Legate stated that
he was working for Zamora, specifically watching Zamora's back. Legate also acquired the murder
weapon after the conversation at the nightclub. While these statements and actions are not dispositive
proof that Legate murdered Garcia, they sufficiently establish adoption for purposes of admitting
Hernandez's testimony regarding the statements made by Legate and Zamora. Trevino, 991 S.W.2d
at 853; Alvarado, 912 S.W.2d at 215. 

 2. Statement by a Co-Conspirator

 Alternatively, the trial court admitted Hernandez's testimony because it was a statement made
by a co-conspirator. Tex. R. Evid. 801(e)(2)(E). In reaching this conclusion, the trial court was
required to find that the evidence showed beyond a preponderance of a doubt that: (1) there was a
conspiracy; and (2) the statement was made during the course of and in furtherance of the conspiracy.
Bourjaily v. United States, 483 U.S. 171, 175 (1987). 

 A conspiracy has been defined as "[w]hat one does pursuant to their common purpose, all do,
and as declarations may be such acts, they are competent against all." Meador, 812 S.W.2d at 333.
Proof of a conspiracy may be inferred from circumstantial evidence. Roy v. State, 608 S.W.2d 645,
651 (Tex. Crim. App. 1980). The Texas Court of Criminal Appeals has determined that a conspiracy
is evidenced provided the record shows that: (1) at the time of the defendant's statement, the co-conspirator was participating in the conspiracy in which the defendant also participated or later
joined; and (2) the statement was made in furtherance of the conspiracy. Ward v. State, 657 S.W.2d
133, 136 &137 (Tex. Crim. App. 1983); Rodriguez v. State, 552 S.W.2d 451, 454 (Tex. Crim. App.
1977). A trial court has discretion to determine admissibility of alleged hearsay statements under the
co-conspirator rule. Howard v. State, 962 S.W.2d. 119, 123 (Tex. App. -Houston [1st Dist.] 1997,
pet. ref'd); Vasquez v. State, 902 S.W.2d 627, n.3 (Tex. App.-El Paso 1995, reversed and remanded
on other grounds, 919 S.W.2d 433 (Tex. Crim. App. 1996); Murdock v. State, 840 S.W.2d 558, 562
(Tex. App.-Texarkana 1992, pet. ref'd).

 The record contains support for the trial court's finding that Zamora and Legate conspired
to "hurt" Garcia in order to prevent Zamora from losing his share of the nightclub. Zamora stated
that he wanted Legate to protect him from the lawyer, or "abogado," officed close to Players
nightclub and that he wanted the lawyer hurt. While Garcia was not a lawyer, he was a successful
businessman in the community. The record reflects that while the term "abogado" is used to describe
a lawyer, it is also used more loosely to describe someone who draws up documents or helps others
out. As an investor and the person who had the management contract for the nightclub, Garcia could
have been termed an "abogado" even though he was not actually an attorney. There is also evidence
that Legate asked Hernandez to get a gun for him and that the gun Hernandez subsequently gave
Legate was very similar to the murder weapon. In light of this evidence, Hernandez's testimony is
admissible under the co-conspirator rule. Bourjaily, 483 U.S. at 175; Rodriguez, 896 S.W.2d at 205;
Meador, 812 S.W.2d at 333. 

 3. Rule 403

 In his second point of error, Legate argues that Hernandez's testimony should not have been
admissible because its prejudicial value outweighed any probative value. Relevant evidence is
admissible, however, unless the probative value is substantially outweighed by the danger of unfair
prejudice to the defendant. Tex. R. Evid. 403; Montgomery v. State, 810 S.W.2d 372, 389 (Tex.
Crim. App. 1991). 

 Eyewitnesses identified Legate as leaving Garcia's office. Garcia's murder was linked to
Legate and the abandoned briefcase found lying close to the murder weapon. Hernandez's testimony
was highly probative in explaining Legate's motive, and is not particularly prejudicial. 

 Legate's first and second points of error are overruled.

 Grand Jury Transcript Request

 Legate alleges that the trial court committed reversible error in denying his request for a
complete copy of Hernandez's grand jury testimony for impeachment purposes. 

 The trial court has considerable discretion concerning production of grand jury testimony.
McManus v. State, 591 S.W.2d 505, 523 (Tex. Crim. App. 1979), overruled on other grounds, Reed
v. State, 744 S.W.2d 112 (Tex. Crim. App. 1988). The Texas Code of Criminal Procedure provides:
"(a) The proceedings of the grand jury shall be secret" and "(d) The defendant may petition a court
to order the disclosure of information otherwise made secret by this article...[upon] a showing by the
defendant of a particularized need." Tex. Code Crim. Proc. Ann. art. 20.02 (Vernon 2000); see
Bynum v. State, 767 S.W.2d 769, 782 (Tex. Crim. App. 1989). The totality of the circumstances
must be examined when determining whether a particularized need exists. Bynum, 767 S.W.2d at
781. A particularized need is not shown simply because the requested testimony pertains to a key
prosecution witness, or that there is a "need" to locate inconsistencies in the witness's testimony.
Bynum, 767 S.W.2d at 783.

 The trial court examined the grand jury transcripts for exculpatory material. Upon failing to
find any such testimony, the trial court refused to turn over the transcripts to defense counsel.
Defense counsel cross-examined Hernandez extensively regarding his incomplete testimony to the
police and his own criminal background. Defense counsel further made clear to the jury that
Hernandez was offered immunity for his testimony, and it was not until this offer that Hernandez was
willing to provide incriminating evidence against Legate and Zamora.

 Defense counsel fully cross-examined Hernandez, effectively questioning his credibility.
Legate has not demonstrated that the grand jury testimony was needed to further question
Hernandez's credibility. The trial court reviewed the transcripts and determined no exculpatory
material existed that would assist in cross-examining Hernandez. Because Legate failed to
demonstrate a particularized need for the grand jury transcripts, we overrule Legate's third point of
error.

Missing Exculpatory Statement

 Legate contends that he was denied his right to a fair trial because the State lost an

exculpatory statement made by Hernandez, thereby preventing Legate from using the statement for
impeachment purposes at trial. According to Legate, Hernandez gave two statements to the police.
The prosecutor initially testified during a pre-trial hearing that Hernandez gave two contradictory
statements prior to testifying before the grand jury. Hernandez gave one written statement to the
police dated October 8, 1998. This statement was furnished to the defense. On November 7, 1998,
Hernandez was approached by the police again, but refused to answer any questions. There is some
indication, however, that the police were able to acquire additional information from Hernandez at
a later date. A police detective testified that Hernandez was not completely forthcoming during his
October interview, but "substantial information" was "eventually obtained from him." Whether this
additional statement was ever reduced to writing is not clear. The State later represented to the trial
court that there was only one written statement, and that the prosecutor's earlier testimony that there
were two written statements was an error.

 Suppression of exculpatory or even favorable evidence to an accused by the State violates due
process where the evidence is material to either guilt or punishment. Brady v. Maryland, 373 U.S.
83, 86 (1963). The existence of good faith or bad faith on the part of the prosecution is irrelevant.
Id. In order to demonstrate that Legate's due process rights were violated, he must show that: (1)
the state failed to disclose evidence; (2) the evidence was favorable to Legate; and (3) the fact that
the evidence was undisclosed creates a probability sufficient to undermine the confidence in the
outcome of the proceeding. Thomas v. State, 841 S.W.2d 399, 407 (Tex. Crim. App. 1992). A
conviction will be overturned only if the evidence may exonerate the defendant. Brady, 373 U.S. at
86; Crutcher v. State, 481 S.W.2d 113, 116-17 (Tex. Crim. App. 1972). 

 Even in the face of deliberate concealment by the prosecution or its agents, there is no due
process violation unless the concealed evidence is material, and when examined as part of the entire
record, creates a reasonable doubt concerning the defendant's guilt that would not otherwise exist.
Ex parte Salinas, 660 S.W.2d 97, 100 (Tex. Crim. App. 1983). Impeachment evidence has been
deemed material because, upon disclosure, it may make a difference in the trial's outcome. O'Rarden
v. State, 777 S.W.2d 455, 458 (Tex. App.-Dallas 1989, pet. ref'd). 

 The record is unclear whether Hernandez gave a second statement, and if he did, whether it
was reduced to writing, or that it conflicted with Hernandez's grand jury or trial testimony. Without
any proof that a second statement existed, much less whether it conflicted with Hernandez's earlier
statement, no reversible error is shown. We overrule Legate's fourth point of error.

Adequate Time to Investigate New Evidence

 During the latter part of the trial, defense counsel received new and possibly exculpatory
evidence. Legate asserts that the trial court abused its discretion in refusing to allow defense counsel
time to adequately investigate such evidence. Defense counsel announced to the court that: (1)
attorney Ed Dineri notified defense counsel that Dineri's client, Charles Rodriguez ("Rodriguez"),
was willing to testify that someone had approached him about putting a "hit" on Garcia; (2) the
District Attorney's office had just informed defense counsel that the individual that requested the "hit"
was supposed to meet Garcia the night of the shooting; and (3) the District Attorney's office had just
informed defense counsel that numerous individuals had gone to Garcia's office immediately after the
shooting and removed documents, possibly exculpatory in nature. Defense counsel asked the trial
court for a continuance to investigate these matters.

 The trial court heard evidence in camera from Rodriguez. Both the State and the defense
were permitted to question Rodriguez on two occasions. In addition, Assistant United States
Attorney Bert Richardson ("Richardson") testified that he was familiar with Rodriguez's claims
regarding possible suspects in Garcia's murder. According to Richardson, Rodriguez named Albert
Bustamante, a former United States Congressman who had spent time in a federal penitentiary,
among others. Richardson testified that when he spoke to Rodriguez, he concluded after only a few
minutes that Rodriguez was not credible and was motivated to make these accusations in order to
stop the pending revocation of his supervised release, or to receive a reduced sentence. Richardson
was unaware as to whether this information had been pursued by the FBI or the DEA, or whether the
Bexar County District Attorney's office was ever notified of Rodriguez's claims.

 After hearing Richardson's testimony, the trial court overruled defense counsel's motion for
continuance and ordered the trial to continue. However, defense counsel was given until 1:30 p.m.
the following day to investigate the identity of the individual Rodriguez said was to meet Garcia the
night of the murder.

 Under these facts, the trial court did, to some degree, grant Legate's oral motion for
continuance by allowing both Rodriguez and Richardson to testify in camera regarding the new and
unexpected information. Additionally, the trial court allowed defense counsel half a day to investigate
the allegation that there was someone who was supposed to meet with Garcia the night he was killed.
Given that these proceedings occurred mid-trial, we do not believe the trial court abused its discretion
in denying Legate a longer continuance. Vega v. State, 898 S.W.2d 359, 361 (Tex. App.-San
Antonio 1995, pet. ref'd). 

 Assuming arguendo that the trial court did not allow the defense sufficient amount of time to
investigate this new information, a motion for continuance must be in writing, allege sufficient facts
to show surprise, and be sworn to by the defendant. Tex. R. Civ. P. 252. None of this was done in
this case. When a motion for continuance made during trial is not in writing and sworn to, error is
not preserved. Matamoros v. State, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995). A refusal to
grant a verbal motion for continuance is not reversible error on the part of the trial court. Hightower
v. State, 629 S.W.2d 920, 925-26 (Tex. Crim. App. 1981); Ashcroft v. State, 900 S.W.2d 817, 834
(Tex. App.-Corpus Christi 1995, no pet.).

 Legate's fifth point of error is overruled.

Autopsy Photographs

 Legate alleges in his sixth and final point of error that the trial court erred in admitting autopsy
photographs because their prejudicial effect far outweighed their probative value. Legate contends
that there was no genuine issue in dispute that the photos could prove because Legate did not
challenge the State's contention that a gunshot through the heart caused Garcia's death. 

 The trial court's decisions concerning admission of evidence are held to an abuse of discretion
standard. Jones v. State, 944 S.W.2d 642, 652 (Tex. Crim. App. 1996); Coffin v. State, 885 S.W.2d
140, 149 (Tex. Crim. App. 1994). A trial judge is given wide discretion when deciding admissibility
of photographs. Sonnier v. State, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995); Etheridge v. State,
903 S.W.2d 1, 21 (Tex. Crim. App. 1994). An abuse of discretion exists when the trial court's ruling
falls outside of the zone of reasonable disagreement. Montgomery v. State, 810 S.W.2d 372, 379
(Tex. Crim. App. 1990); Ventroy v. State, 917 S.W.2d 419, 423 (Tex. App.-San Antonio 1996, pet.
ref'd). Rule 403 carries with it the presumption that relevant evidence will be more probative than
prejudicial. Jones, 944 S.W.2d at 652; see also Tex. R. Evid. 403. Consequently, there must be a
marked disparity between the evidence's prejudice and its probative value before the Rule 403
balancing test requires exclusion. Jones, 944 S.W.2d at 652.

 The photographs in question are varied in content. One picture is taken from above, depicting
Garcia's head and shoulders after he had been autopsied and a large, sutured incision extends from
under his left arm to the center of his chest. This picture was used to show the gunshot's entrance
wound. There was a close-up of the wound as well. The photos that Legate complains most
strenuously about, however, concern photographs of Garcia's heart. There are two pictures of
Garcia's heart, removed from his body, which were used at trial to demonstrate the entry and exit
wounds made by the bullet. All of the photographs are in color. The trial court admitted each of
these photographs into evidence, but refused to allow a fifth photo, due to its cumulative and
potentially prejudicial nature.

 Legate is correct in saying that the photos prove very little other than what was already
known: that Garcia was shot in the heart and died as a result. Defense counsel repeatedly objected
to the introduction of the photographs, alleging that they were disproportionately prejudicial in
nature. Tex. R. Evid. 403. A photo is admissible, however, if a verbal description of what is
depicted in the photo is also admissible. Brown v. State, 696 S.W.2d 913, 914 (Tex. Crim. App.
1985); Adams v. State, 685 S.W.2d 661, 668 (Tex. Crim. App. 1985). Specifically, autopsy
photographs are admissible unless they depict mutilations of the victim due to the autopsy itself.
Rojas v. State, 986 S.W.2d 241, 249 (Tex. Crim. App. 1998); Santellan v. State, 939 S.W.2d 155,
172 (Tex. Crim. App. 1997). Conversely, photos that depict the nature, location, and extent of a
wound have been declared probative enough to outweigh any prejudicial effects such photos may
have on the jury, and are therefore properly admissible. Etheridge, 903 S.W.2d at 21; Santallan, 939
S.W.2d at 172. Because there is some probative value of the photos in helping the jury understand
the nature of Garcia's wounds and given the wide discretion afforded a trial judge, Legate's sixth
point of error is overruled.

Conclusion

 The trial court's ruling is affirmed.


 Phil Hardberger, Chief Justice

PUBLISH