COURT OF
APPEALS

                                                    EIGHTH DISTRICT
OF TEXAS

                                                               EL
PASO, TEXAS

 

                                                                              )     

                                                                              )                    No. 
08-01-00502-CV

IN THE MATTER OF                                          )

                                                                              )                             Appeal from

B.D.G., a Juvenile.                                                 )     

                                                                              )                      327th District Court

                                                                              )

                                                                              )                 of El Paso County, Texas

                                                                              )

                                                                              )                          (TC# 0101457)

 

O
P I N I O N

 

B.D.G.,
a juvenile, appeals from an adjudication order and disposition order.  A jury found that B.D.G. engaged in
delinquent conduct by possessing more than fifty but less than 2,000 pounds of
marihuana.  Following a disposition
hearing, the trial court placed B.D.G. on supervised juvenile probation with an
electronic monitor.  We affirm.

FACTUAL SUMMARY








Ray
Provencio, a United States Custom Inspector, was working at the Bridge of the
Americas during the late evening hours of October 1, 2001.  At approximately 11:20 p.m., a 1985 Chrysler
Fifth Avenue approached Provencio=s
lane attempting to make entry into the United States.  The vehicle was driven by seventeen-year-old
N.G., B.D.G.=s older
brother.  B.D.G. sat in the right rear
passenger seat and a female passenger sat in the front seat.  N.G. told Provencio that they had driven to
Juarez to visit their grandmother and were now on their way home.  At first, he said they had entered Juarez
three hours earlier, but then said they had left El Paso at 3:30 p.m. that same
day.  According to N.G., the vehicle
belonged to his father.  The vehicle had
been in N.G.=s
possession during the entire trip. 
B.D.G. told Provencio that he had been with N.G. throughout the
trip.  

Provencio,
who was familiar with the model vehicle driven by N.G., observed that the
vehicle=s rear
seats were protruding and Aswollen@ rather than Aplush.@ 
He pushed on the seats and noticed that both the seat and backrest felt
solid.  Provencio opened the trunk and
pushed a Aprobe@ through the backseat.  When he pulled it out, he extracted a green
leafy substance consistent with marihuana. 
Provencio discreetly signaled for assistance, removed N.G., B.D.G. and
the female passenger from the vehicle, and escorted them to the customs
office.  The vehicle was moved to another
area for closer inspection.

Alfonso
Holguin, a customs inspector, confirmed Provencio=s
observation that the rear seat and backrest were not only bulging abnormally
but were solid when he touched them.  It
took them approximately thirty minutes to remove twenty-three bundles of
marihuana from inside the rear seat where it had been hidden in the springs.  The marihuana weighed 97.8 pounds and in
Holguin=s
opinion, it would have taken more than a few minutes to hide the marihuana in
this manner.  

B.D.G.=s father, F.G., testified that B.D.G.
told him that he was going out that evening with a friend.  He did not specifically mention that he was
going out with his brother, but F.G. noted that they always went out
together.  F.G. had never owned a 1985
Chrysler Fifth Avenue and B.D.G.=s
grandmother did not live in Juarez.

HEARSAY TESTIMONY

In
Issue One, B.D.G. challenges the admission of several hearsay statements
through the witness Provencio.  During
the State=s direct
examination of Provencio, the following occurred:








[The State]:  And what conversation, if any, took place
between you and [N.G.]?

 

[Provencio]:  I received the standard customs declaration
as far as admissibility and entry into the country.

 

[The State]:  Did you ask him anything else concerning
their whereabouts?

 

[Provencio]:  Yes.  I
asked the purpose of their trip to Mexico and the driver said at that time --

 

[Defense
counsel]:  I=m
going to have to object, of course, to any hearsay for  purposes of the record, sir.  And also right of confrontation as to
anything that the driver might have told this officer.

 

[The Court]:  The objection is overruled.  You may go ahead and answer.

 

[Defense
counsel]:  Thank you, sir.

 

[Provencio]:  I asked the driver the purpose of the trip to
Mexico.  The driver stated that the
purpose of their trip to Mexico was to go visit the grandmother.

 

[The State]:  Okay. 
Did you ask him how long he had been in Mexico?

 

[Provencio]:  Later on I asked him approximately how long
ago he left El Paso, and he stated he left three hours prior.  But then I further -- later on after that I
asked him approximately what time he left El Paso and he stated 3:30 p.m..

 

.          .          .

 

[The State]:  Okay. 
Did you ask him concerning ownership of the vehicle?

 

.          .          .

 

[Defense
counsel]:  Again, judge, we have to, for
the purposes of the record, object to anything that this driver is stating to
this customs officer as hearsay statements, and they also violate [B.G.]=s right to confrontation.

 

[The Court]:  All right. 
Objections will be overruled.  You
may answer.

 

[Provencio]:  The driver stated the owner of the vehicle
was his father.

 

[The State]:  And did he say how long his father has owned
the vehicle?

 








[Provencio]:  Approximately three months.  

 

.          .          .

 

[The State]:  And so did you ask anything else of [N.G.]
besides what you=ve
already testified to at primary?

 

[Provencio]:  At primary I asked him if he had full
possession of the vehicle when he was in Mexico.

 

[Defense
counsel]:  Again, I have to object for
purposes of record, sir, as to hearsay and right of confrontation on behalf of
my client.

 

[The Court]:  All right, objection is overruled.  Go ahead and answer, please.

 

[Provencio]:  I asked [N.G.] when he went to Mexico if the
vehicle had been in his possession from El Paso to Juarez to El Paso, he
further stated yes.  I asked him where he
was headed at the moment, he said he was headed home.  I asked him if he was headed straight home
with no other stops and he said yes. 
That=s --
those are the questions I asked.  

 

Generally,
hearsay is not admissible except as provided by statute or the Texas Rules of
Evidence.  Tex.R.Evid. 802.  Hearsay is a statement, other than one made
by the declarant while testifying at trial or hearing, offered into evidence to
prove the truth of the matter asserted.  Tex.R.Evid. 801(d).  B.D.G. admits that several of N.G.=s statements are not hearsay because
they were not offered for the truth of the matter asserted.  All of N.G.=s
statements pertaining to the purpose of their trip, the time they left El Paso,
and their father=s
ownership of the car are not hearsay because the State offered the statements
only to show that N.G. made them, and not for the truth of the matter
asserted.  In fact, the State offered the
statements to show that they were not true statements.  Therefore, these statements do not qualify as
hearsay.








The
critical statement, however, is N.G.=s
comment that the vehicle had been in his possession during the entire trip from
El Paso to Juarez.  The State offered
this for the truth of the matter asserted because it sought to show that B.D.G.
had been present when the marihuana had been loaded in the vehicle.  It pointed to this statement and B.D.G.=s statement that he had been present
with N.G. throughout the trip to Juarez as proof that B.D.G. had been present
when the marihuana was loaded in the vehicle.

The
State argues that N.G.=s
statement is admissible as a statement by a co-conspirator made during the
course of and in furtherance of the conspiracy. 
Tex.R.Evid. 801(e)(2)(E).  Such a statement is not hearsay.  Further, the applicability of Rule
801(e)(2)(E) is not limited to conspiracy prosecutions.  Meador v. State, 812 S.W.2d 330, 333
(Tex.Crim.App. 1991).  Rather, it is a
rule of evidence applicable to any offense.  Meador, 812 S.W.2d at 333.  The party offering the statement under this
rule has the burden of showing by a preponderance of the evidence that, at the
time of his statement, the alleged co-conspirator was participating in a
conspiracy in which the defendant was also participating or later joined and
that the statement was made in furtherance of that conspiracy.  Ward v. State, 657 S.W.2d 133, 136-37
(Tex.Crim.App. 1983); see Bourjaily v. United States, 483 U.S. 171, 175,
107 S.Ct. 2775, 2779, 97 L.Ed.2d 144 (1987). 
A trial court has discretion to determine admissibility of alleged
hearsay statements under the co-conspirator rule.  Howard v. State, 962 S.W.2d 119, 123
(Tex.App.--Houston [1st Dist.] 1997, pet. ref=d).  Therefore, we review the trial court=s ruling for an abuse of discretion.








Given
the totality of the circumstantial and direct evidence, the State sufficiently
established that B.D.G. and N.G. had an agreement to smuggle marihuana into the
United States.  N.G.=s statement to Provencio was certainly
made during the course of the conspiracy. 
Now, we must determine whether it was also made Ain
furtherance@ of the
conspiracy, or in other words, whether it was made in an effort to advance the
cause of the conspiracy or facilitate the conspiracy.  See Deeb v. State, 815 S.W.2d 692, 697
(Tex.Crim.App. 1991), cert. denied, 505 U.S. 1223, 112 S.Ct. 3038, 120
L.Ed.2d 907 (1992).  At the point
Provencio asked N.G. whether the vehicle had been out of his possession, no
marihuana had been found.  The question
was not asked to establish possession of any contraband that might later be
found but rather to determine whether someone had placed something in the
vehicle without N.G.=s
knowledge or permission.  N.G. answered
this question in the negative with the presumed expectation that they would be
permitted to enter the United States with the vehicle and the marihuana.  Thus, the State sufficiently established that
he made the statement to facilitate the conspiracy.  The trial court did not abuse its discretion
in  admitting the statement under Rule
801(e)(2)(E).  Issue One is overruled.

LEGAL SUFFICIENCY

In
Issue Two, B.D.G. challenges the legal sufficiency of the evidence to support
the jury=s finding
that he engaged in delinquent conduct by possessing marihuana because there are
insufficient affirmative links.  When
reviewing challenges to the legal sufficiency of the evidence to establish the
elements of the penal offense that forms the basis of the finding that the
juvenile engaged in delinquent conduct, we apply the standard set forth in Jackson
v. Virginia, 443 U.S. 307, 320, 99 S.Ct. 2781, 2789‑90, 61
L.Ed.2d 560 (1979).  In the Matter of
A.S., 954 S.W.2d 855, 858 (Tex.App.--El Paso 1997, no pet.).  Under this standard, an appellate court must
review all the evidence, both State and defense, in the light most favorable to
the verdict to determine whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt.  Jackson, 443 U.S. at 318-19, 99 S.Ct.
at 2789; Alvarado v. State, 912 S.W.2d 199, 207 (Tex.Crim.App. 1995).













To
support a conviction for unlawful possession, the State must prove that the
accused (1) exercised care, control, and management over the contraband, and
(2) knew the matter possessed was contraband. 
See Martin v. State, 753 S.W.2d 384, 386 (Tex.Crim.App. 1988); Davila
v. State, 930 S.W.2d 641, 644-45 (Tex.App.--El Paso 1996, pet. ref=d). 
Mere presence at the scene is not sufficient to establish unlawful
possession of a controlled substance, but evidence which affirmatively links
the defendant to the controlled substance will suffice to prove that he
possessed it knowingly.  McGoldrick v.
State, 682 S.W.2d 573, 578-79 (Tex.Crim.App. 1985).  The affirmative link must raise a reasonable
inference that the accused knew of and controlled the contraband, Christian
v. State, 686 S.W.2d 930, 932 (Tex.Crim.App. 1985); Levario v. State,
964 S.W.2d 290, 294 (Tex.App.--El Paso 1997, no pet.), and may be shown by
either direct or circumstantial evidence establishing Ato
the requisite level of confidence, that the accused=s
connection with the drug was more than just fortuitous.@  Brown v. State, 911 S.W.2d 744, 747
(Tex.Crim.App. 1995).  Factors which may
establish an affirmative link are whether: 
(1) the contraband was in plain view; (2) the contraband was
conveniently accessible to the accused; (3) the accused was the owner of the
place where the contraband was found; (4) the accused was the driver of the
automobile in which the contraband was found; (5) the contraband was found on
the same side of the car seat as the accused was sitting; (6) the place where
the contraband was found was enclosed; (7) the strong odor of marijuana was
present; (8) paraphernalia to use the contraband was in view of or found on the
accused; (9) conduct by the accused indicated a consciousness of guilt; (10)
the accused had a special connection to the contraband; (11) occupants of the
automobile gave conflicting statements about relevant matters; (12) the
physical condition of the accused indicated recent consumption of the
contraband found in the car; (13) traces of the contraband were found on the
accused; and (14) affirmative statements connected the accused to the
contraband.  Whitworth v. State,
808 S.W.2d 566, 569 (Tex.App.--Austin 1991, pet. ref=d)(and
cases cited therein).  Certain of these
factors may bear on the care, custody, control or management element of the
offense.  Whitworth, 808 S.W.2d at
569. Others may bear on knowledge and some may be relevant to both.  Id. 
One factor alone does not support a finding of an affirmative link.  Herndon v. State, 787 S.W.2d 408, 409
(Tex.Crim.App. 1990).  The number of
factors present is less important than the logical force the factors have alone
or in combination in establishing the elements of the offense.  Whitworth, 808 S.W.2d at 569.

Taken
in the light most favorable to the verdict, the evidence showed that B.D.G. was
returning from Juarez in a vehicle loaded with nearly 100 pounds of
marihuana.  The marihuana was concealed
in a seat on which B.D.G. sat.  Both
Provencio and Holguin observed that the marihuana caused the seat to not only
bulge noticeably but to be hard and uncomfortable.  B.D.G. neglected to inform his father about
their plans to go to Juarez but instead told him only that he was going out
with a friend.  N.G. lied to Provencio
about the purpose of their trip and their father=s
ownership of the vehicle thereby indicating a consciousness of guilt on N.G.=s part. 
Significantly, N.G. told Provencio that the vehicle had not left his
possession during their trip to Juarez and B.D.G. stated that he had been with
N.G. during the entire trip.  Given that
the State established a consciousness of guilt on the part of N.G. and the
connection between the brothers and the vehicle, the jury could have reasonably
concluded that B.D.G. had knowledge of the marihuana in the vehicle.  Issue Two is overruled.

FACTUAL SUFFICIENCY

In
Issue Three, B.D.G. challenges the factual sufficiency of the evidence to
support the jury=s finding
of delinquent conduct.  As argued in Issue
Two, he maintains that the evidence shows nothing more than mere presence.








In
reviewing this factual sufficiency challenge, we view all of the evidence but
do not view it in the light most favorable to the verdict in determining
whether the State met its burden of proof beyond a reasonable doubt.  A.S., 954 S.W.2d at 860; see also
Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996).  Only if the verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust will we
conclude that the State failed to carry its burden.  A.S., 954 S.W.2d at 860.

Although
B.D.G. argues that the evidence shows nothing more than mere presence in the
vehicle, the evidence permits a conclusion that B.D.G. was present when the
marihuana was loaded in the vehicle. 
N.G. told Provencio that the vehicle had been in his constant possession
while in Juarez.  According to N.G.=s statements, the trio had been in
Juarez for approximately eight hours. 
N.G.=s
knowledge of the marihuana in the vehicle is evidenced by his exercise of
control over the vehicle and the lies he told Provencio about their purpose in
going to Juarez and his father=s
ownership of the car.  Given B.D.G.=s admission that he had been with his
brother during the entire trip, the jury could have concluded that B.D.G. was
present when the marihuana was loaded in the vehicle.  After reviewing all of the evidence, we
cannot say that the jury=s
verdict is contrary to the overwhelming weight of the evidence.  Issue Three is overruled.  The adjudication and disposition orders are
affirmed.

 

 

October 31, 2002

                                                                        


ANN CRAWFORD
McCLURE, Justice

 

Before Panel No. 1

Larsen, McClure, and Chew, JJ.

 

(Do Not Publish)