# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00625-CR

**Russell S. Byrd, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE CRIMINAL DISTRICT COURT NO. 2 OF DALLAS COUNTY
### NO. F-0201099-VI, HONORABLE CLIFFORD STRICKLIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant, Russell Byrd, guilty of murder and assessed punishment at imprisonment for forty years and a ten thousand dollar fine. Tex. Pen. Code Ann. § 19.02 (West 2003). Appellant raises two issues challenging his conviction. He contends that the evidence was factually insufficient to support his conviction and that a statement by a co-conspirator was improperly admitted. We will overrule these contentions and affirm the conviction.

In March of 2001, Karl McAlister was drinking and doing cocaine with appellant's brother, Randy Byrd, and Elizabeth Faye Steward at Randy Byrd's apartment. Appellant called his brother on the phone and later came over to the apartment to join the party. By the early hours of the morning, all were intoxicated and McAlister became aggressive towards Randy Byrd. On several occasions, McAlister scuffled with Randy Byrd and the fight was broken up by either Steward or

appellant. Attempts were made to calm McAlister and get him to leave. After one such scuffle, appellant produced a steak knife from his brother's kitchen. He held the knife in front of McAlister and warned him to stop fighting. McAlister yelled and grabbed the knife. A violent struggle ensued between appellant, Randy Byrd, and McAlister in which many items in the apartment were broken. The fight ended after McAlister was hit in the head with a barbell.

McAlister was motionless, bleeding from the head, and did not have a pulse. His body was placed in the back of his truck and driven to a rural part of south Dallas. Gasoline was poured on the body and the truck was set on fire. McAlister's burned body was found by firefighters called to the scene and was later identified through the use of dental records.

In his first issue, appellant contends that the evidence presented at trial was factually insufficient to support his conviction for murder. In determining factual sufficiency, we view all of the evidence in a neutral light and set aside the verdict only if it is either so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury's determination. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Although we are authorized to disagree with a jury's factual determination, we employ appropriate deference to the fact finder as the sole judge of weight and credibility given to witness testimony. *Johnson*, 23 S.W.3d at 7; *Jones v. State*, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). We do not reweigh the evidence and set aside a verdict merely because a different result would be more reasonable. *Jones*, 944 S.W.2d at 648; *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996). A determination that a jury's verdict is factually insufficient is only appropriate in instances such as where the verdict is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Clewis*, 922 S.W.2d at 135-36.

2

We review all of the evidence presented by both sides in determining factual sufficiency. *Johnson*, 23 S.W.3d at 7. Steward testified extensively about the events of the evening of McAlister's death. She testified that McAlister had been fighting with Randy Byrd on and off throughout the evening. She stated that appellant went into the kitchen and came back with a steak knife. He threatened McAlister with the knife and told him to stop fighting. She then testified that McAlister grabbed the knife and began to struggle with both Randy Byrd and appellant. She explained that she went into the bedroom to avoid the fight and did not actually see who killed McAlister. After things quieted down, she came out and saw McAlister lying on the floor and appellant had a barbell in his hand.

Randy Byrd testified as a rebuttal witness for the State. His description of the fight was similar to Steward's testimony. He testified that appellant produced a steak knife and threatened McAlister with it. McAlister grabbed the knife and began to struggle with appellant. He described a lengthy fight in his living room in which a window and his television were broken. He stated that, at one point, his brother Russell picked up a barbell, said "fuck him," and hit McAlister in the head with the barbell. After being hit, McAlister was on the floor bleeding from the head. Both Randy Byrd and Steward described taking McAlister's body in his truck to a rural area and setting the truck ablaze.

Bryan Murphy testified about a statement that appellant made to him while the two shared a Dallas County jail cell. Murphy testified that appellant told him that he had gotten into a fight with a guy at his brother's apartment. He said that appellant told him he hit the guy in the back

3

of the head with a dumbbell bar. He described putting the body in a car, driving it to south Dallas, and burning the car.

Jill Urban, a medical examiner with the Southwestern Institute of Forensic Sciences, testified about her examination of McAlister's body. She testified that there were burns over one hundred percent of the body, but that it appeared the cause of death was due to blunt force trauma. She described seeing semicircular shaped abrasions on the left side of the face and damage to the left side of the brain. She testified that McAlister's injuries were consistent with being hit in the head with a barbell.

Appellant points to statements by his brother Randy admitting to the murder in support of his claim of factual insufficiency. Randy Byrd was interrogated by the police two days after McAlister's death. He initially told the police that McAlister had been to his apartment, they fought, but that McAlister left the apartment on his own. After the police informed him that Steward was being questioned and had told them what happened, Randy Byrd told the police that Steward and appellant were also at the apartment, but that he, not his brother, had hit McAlister in the fight.

Mike Baker, Randy Byrd's supervisor at work, also testified regarding a statement made by Randy Byrd. He explained that he went to visit Randy Byrd at the jail several days after he was arrested. Baker testified that Randy Byrd was crying and said, "I did it. I swear to god it was self defense." Baker stated that Randy Byrd told him he was fighting with McAlister and that he couldn't control McAlister. Randy Byrd told him, "[i]t kept getting worse, so I picked up something and hit him . . . ." Baker stated that Randy Byrd did not mention appellant or Steward.

4

Appellant also points to the fact that Steward and Randy Byrd were subject to pressure by the district attorney because both had pending charges for murder and arson. Randy Byrd wrote a letter to his father stating that the district attorney would reduce the charges if he testified. Both Steward and Randy Byrd testified, however, that they had not made a deal with the district attorney in exchange for their testimony. Bryan Murphy was also incarcerated at the time of his testimony and testified that the district attorney agreed to write a letter to the parole board on his behalf, but that the letter was not the reason he came forward with the information.

Viewing the record in a neutral light, we do not find that the jury's verdict was either so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the verdict. *See Johnson*, 23 S.W.3d at 11. Although Randy Byrd made inconsistent statements, he testified at trial that he saw his brother Russell hit McAlister with the barbell. Steward testified that she saw appellant with the barbell in his hand soon after the fighting stopped. A medical examiner testified that McAlister's injuries were consistent with being hit in the head with a barbell. Furthermore, Murphy testified that appellant admitted to hitting McAlister with a barbell while the two were sharing a jail cell. The jury was entitled to believe the testimony of Steward, Randy Byrd and Murphy in finding that appellant murdered McAlister. *See Johnson*, 23 S.W.3d at 7; *Jones v. State*, 944 S.W.2d at 648 (jury is sole judge of credibility of witnesses). We therefore overrule appellant's first issue.

In his second issue, appellant contends that Steward was improperly allowed to testify to a hearsay statement made by Randy Byrd implicating appellant in the murder. Steward testified that she was with Randy Byrd the day after the murder. She recounted a conversation they had at

5

her apartment in which Randy told her that they could not tell anyone about the murder and that he would claim responsibility if anyone asked. Later in her testimony, Steward was asked specifically about a statement made during the discussion she mentioned previously in her testimony. Steward stated that she and Randy were talking about what had happened the night of the murder and that he asked, "why did Karl just keep doing it and why did Russell have to hit him." Appellant objected to the question which elicited this statement on hearsay grounds. After determining that the statement was made prior to Steward speaking with the police, the trial court overruled the objection and allowed the testimony.

We review a trial court's decision to admit evidence under an abuse of discretion standard. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002); *Coffin v. State*, 885 S.W. 2d 140, 149 (Tex. Crim. App. 1994). We will not disturb the evidentiary ruling of the trial court unless it falls outside the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990); *Brown v. State*, 96 S.W.3d 508, 515 (Tex. App.—Austin 2002, no pet.). On its face, Steward's testimony regarding the statement made to her by Randy Byrd is hearsay. Tex. R. Evid. 801(d). The State contends, however, that the statement was not hearsay because it was the statement of a co-conspirator and therefore an admission by a party opponent. *See* Tex. R. Evid. 801(e)(2). The co-conspirator exception to the hearsay rule is a rule of evidence and is applicable to any offense, not just conspiracy. *Meador v. State*, 812 S.W.2d 330, 332 (Tex. Crim. App. 1991). A statement by a co-conspirator is not hearsay if it is offered against a party and was made during the course and in furtherance of the conspiracy. *See* Tex. R. Evid. 801(e)(2)(E); *Guidry v. State*, 9 S.W.3d 133, 148 (Tex. Crim. App. 1999). A statement made "in furtherance" of

6

a conspiracy must be made in an effort to advance the cause of the conspiracy or to serve or facilitate the conspiracy. *Id.*; *Deeb v. State*, 815 S.W.2d 692, 697 (Tex. Crim. App. 1991). The "in furtherance" requirement is not to be construed too strictly lest the purpose of the exception be defeated. *See United States v. Cornett & Galloway*, 195 F.3d 776, 782 (5th Cir. 1999); *United States v. Lechuga*, 888 F.2d 1472, 1480 (5th Cir. 1989). However, mere idle chatter among co-conspirators, even if it is prejudicial, does not meet the "in furtherance" requirement of the rule. *Id.*

The state contends that Steward's testimony regarding the statement "why did Russell have to hit him" meets the requirements of Rule 801(E)(2)(e). Both Steward and Randy Byrd were engaged in a conspiracy to obstruct justice and conceal McAlister's murder, the conspiracy was ongoing at the time of the statement, and the statement was made in furtherance of the conspiracy in that it served to identify appellant's role in the conspiracy. *See Crum v. State*, 946 S.W.2d 349, 363 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd).

Our review of the record shows that Steward and Randy Byrd were part of a conspiracy to hinder appellant's apprehension by assisting in disposing of McAlister's body and cleaning up the scene of the crime. *See* Tex. Pen. Code Ann. § 38.05 (West 2003); *Valdez v. State*, 623 S.W.2d 317, 320 (Tex. Crim. App. 1981); *Navarro v. State*, 863 S.W.2d 191, 202 (Tex. App.—Austin 1993, pet. ref'd) (assisting in disposing of body and weapon after murder would subject person to prosecution under section 38.05 of the Texas Penal Code). The conversation Steward discussed in her testimony was not "idle chatter," but rather a plan that neither would tell anyone about the crime and that Randy Byrd would protect Steward and appellant if the subject ever came up. In the context of the conversation taken as a whole, the statement "why did Russell have

7

to hit him" could reasonably be characterized as identifying appellant's role in the crime and therefore made in furtherance of the conspiracy. Therefore, we cannot conclude that the trial court abused its discretion in admitting the statement implicating appellant. Even if we were to find that Randy Byrd's statement was improperly admitted through Steward's testimony, he later testified at trial that the appellant hit McAlister with a barbell. Therefore, Steward's testimony regarding Randy Byrd's statement, if admitted in error, was harmless. *See Boles v. State*, 598 S.W.2d 274, 280-81 (Tex. Crim. App. 1980) (no reversible error where facts complained of are admitted without objection by other competent evidence). Appellant's second issue is overruled.

The judgment of conviction is affirmed.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: January 29, 2004

Do Not Publish